IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ASHLAND INC., d/b/a VALVOLINE,
and ASHLAND LICENSING AND
INTELLECTUAL PROPERTY LLC,

                Plaintiffs,

v.                                    CIVIL ACTION NO.   3:13-21768

JEFF RANDOLPH d/b/a KWIK LUBE,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiffs' Motion for Entry of Judgment and Permanent Injunction Order (ECF No. 11). Within this Motion, Plaintiffs also request reasonable attorney's fees and costs incurred in this action. The Court **GRANTS in part** Plaintiffs' Motion. The Court **GRANTS** Plaintiffs' request for costs incurred in this action, but the Court **DENIES without prejudice** Plaintiffs' request for reasonable attorney's fees. The Court **DIRECTS** Plaintiffs to file any new motions regarding reasonable attorney's fees within 14 days of the entry of this Order.

Further, the Court **PERMANENTLY ENJOINS** Defendant and his directors, principals, officers, agents, servants, employees, representatives, successors, assignees, corporate affiliates, and shareholders, if any—and all those persons or entities acting in concert or participation with Defendant—from:

1. Using Plaintiffs' registered trademarks—or any other logos or trademarks that are confusingly similar to Plaintiffs' trademarks—for retail purposes or otherwise, including

    displaying such logos or trademarks as part of any sign, advertisement, or billboard promoting Defendant's business;

2. Engaging in any course of conduct with respect to Plaintiffs' registered trademarks that is likely to mislead the public into believing that Defendant is affiliated with or otherwise connected to Plaintiffs' business operations;

3. Engaging in any course of conduct with respect to Plaintiffs' registered trademarks that is likely to mislead the public into believing that the products marketed and/or offered for sale by Defendant are licensed, sponsored, authorized, or otherwise approved by Plaintiffs; and/or

4. Engaging in any other activity constituting infringement of or unfair competition with respect to Plaintiffs' registered trademarks.

The Court **ORDERS** Defendant to remove any and all of Plaintiffs' registered trademarks—including, but not limited to, the Valvoline® trademark—from any sign, billboard, store front, and/or advertisement displayed as part of or in connection with Defendant's business operations within 10 days of the entry of this Order. This Court shall have jurisdiction and be the appropriate venue for the enforcement of this Permanent Injunction, and Defendant will be assessed all future costs associated with any enforcement action.

## I. Background

Plaintiffs field their Complaint, ECF No. 1, with this Court on August 13, 2013, and then filed an Amended Complaint, ECF No. 5,—removing Defendant Kwik Lube, Inc., and adding Defendant Jeff Randolph, doing business as Kwik Lube—on September 5, 2013. Defendant was served with the applicable complaint on each occasion, but he did not file an answer or any other responsive pleading. Accordingly, the Clerk of Court entered default against Defendant on

October 9, 2013. ECF No. 9. Plaintiffs then filed the instant Motion for Entry of Judgment and Permanent Injunction Order, including its request for reasonable attorney's fees and costs incurred in this action. This Motion is now ripe for resolution.

## II.     Analysis

Plaintiffs' Amended Complaint alleges trademark infringement by Defendant in violation of 15 U.S.C. § 1114 and requests permanent injunctive relief under 15 U.S.C. § 1116 and reasonable attorney's fees under 15 U.S.C. § 1117(a). Plaintiff also alleges unfair competition by Defendant in violation of 15 U.S.C. § 1125(a) and violations by Defendant of West Virginia Code §§ 47-2-12 and 42-2-14, under which they also seek permanent injunctive relief. Plaintiffs also request costs in the Complaint without specifying under which statute such costs are sought. Because Plaintiffs succeed in proving that Defendant violated—and is continuing to violate—15 U.S.C. § 1114 and are granted a permanent injunction and costs based upon this violation, the Court will not review the remaining claims.

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Thus, based upon the allegations in the Amended Complaint, the Court finds the pertinent facts as follows: Defendant Jeff Randolph, d/b/a Kwik Lube, leases and operates an automobile repair store in Huntington, West Virginia, whereat he advertises his store to the general public through signs and displays both on the building itself and around the building. As part of these advertisements, Defendant prominently displays several Valvoline® logos and other trademarks.[1] Ashland Licensing and Intellectual Property, LLC, is the owner of the Valvoline® registered trademark, including Registration Nos. 1,059,021; 1,084,465; 1,601,798; 2,015,438; and 3,512,482. Ashland, Inc., is

---

[1] The Valvoline® trademarks at issue are displayed on page 2 of Plaintiffs' Memorandum of Law in Support of its Motion for Entry of Judgment and Permanent Injunction Order, ECF No. 12, and in ¶ 23 of their Amended Complaint.

the sole member of Ashland Licensing and Intellectual Property, LLC, and is the exclusive licensee of these trademarks within the United States. Under the trade name Valvoline®, Ashland, Inc., markets, distributes, and produces automotive services and products, including automotive lubricants, transmission fluids, gear oils, hydraulic lubricants, specialty products, greases, and cooling system products. The display of the Valvoline® logo and trademark is reserved for those businesses under a product supply or other agreement with Plaintiffs authorizing the display. Defendant is not under any such agreement with Plaintiffs. Plaintiffs attempted via letter both on December 20, 2012, and on May 3, 2013,—and via several phone calls in the interim—to demand the immediate removal of all Valvoline® marks from Defendant's business. Defendant did not comply.

### A. Trademark Infringement Claim

Title 15 U.S.C. § 1114(1)(a) states:

> Any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

To prevail on a trademark infringement claim, the plaintiff mark holder must prove:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C. §§ 1114, 1125(a)).

Plaintiffs are the owner and licensee of the Valvoline® trademarks. Defendant used the marks "in commerce"[2] and "in connection with the sale, offering for sale, distribution, or advertising" of goods or services by displaying them prominently at his automotive repair business. Finally, Defendant's prominent use of the Valvoline® trademarks in connection with his business when he is under no agreement with Plaintiffs authorizing such display is likely to confuse consumers. The main purpose of protection against trademark infringement is to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to *distinguish among* competing producers." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (emphasis added) (internal quotation marks omitted). "National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the *maintenance of quality* by securing to the producer the benefits of *good reputation*." *Id.* (emphasis added). Here, Plaintiffs assert that the Valvoline® trademarks "have become favorably known in the minds of the purchasing public . . . throughout the United States as indicating the source, origin, and quality of Valvoline's[®] products and services." Am. Compl. ¶ 31. Although Defendant "advertis[es] the use of Valvoline[®] products . . . [he] in fact uses products other than Valvoline[®] and thus misrepresents to the general public that [he] is using solely Valvoline® branded products." *Id.* ¶ 26. In doing so, Defendant "creates the appearance that [his business] is a duly licensed distributor of Valvoline[®] products" and "injures . . . Valvoline's[®] . . . business reputation." *Id.* ¶ 32. Thus, Defendant's use of the Valvoline® trademarks in connection with his business is likely to confuse consumers. Plaintiffs have met their burden of proving trademark infringement by Defendant.

---

[2] "[A] mark is used in commerce only if it accompanies services rendered in commerce, *i.e.,* it is employed appurtenant to an established business or trade that is in commerce . . . ." *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 364 (4th Cir. 2003).

### B. Permanent Injunction

Given the ongoing trademark infringement by Defendant in violation of 15 U.S.C. § 1114, Plaintiffs request permanent injunctive relief under 15 U.S.C. § 1116. Section 1116 states:

> The . . . courts . . . shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . .

To be granted a permanent injunction, the plaintiff in a default judgment action involving trademark infringement must satisfy the traditional permanent-injunction analysis. *Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 595 (D.S.C. 2011). Thus, Plaintiffs must show that:

(1) they have "suffered an irreparable injury;"

(2) the "remedies available at law are inadequate";

(3) "the balance of the hardships favors" their being granted an injunction; and

(4) "the public interest would not be disserved by the injunction."

*PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011).

In *Lone Star Steakhouse & Saloon, Inc., v. Alpha of Virginia, Inc.*, the Fourth Circuit stated that "an injunction is the preferred remedy to insure that future violations will not occur" in a trademark infringement action. 43 F.3d 922, 939 (4th Cir. 1995) (internal quotation marks omitted). The Court also noted that plaintiffs in infringement actions "need not . . . offer[] specific evidence of irreparable injury," given that "irreparable injury regularly follows from trademark infringement." *Id.* Though it has not directly endorsed it, the Fourth Circuit has recognized that a "presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 & n.3 (4th Cir. 2002) (noting that district courts within the circuit have applied the presumption). Additionally, the *Lone Star* court noted that "an injunction in [a

trademark infringement case] would serve the public interest by preventing future consumers from being misled." 43 F.3d at 939.

Plaintiffs note that, given that there is no contractual relationship between them and Defendant, they are "powerless to ensure the quality of Defendant's operation" and that Defendant's uncontrolled actions "undermine[] the public's faith in Plaintiffs' products and damages Plaintiffs' reputation in the industry with their existing and potential customers." Pls.' Mem. Law Supp. Mot. Entry J. & Perm. Inj. Order 8. Plaintiffs argue that this lack of control subjects Plaintiffs to irreparable injury. *Id.* This Court agrees. Plaintiffs have also shown that the remedies at law are inadequate and that the balance of the hardships favors their being granted an injunction. Despite Plaintiffs' two letters, multiple calls, and filing this lawsuit, Defendant continues to leave the Valvoline® logos posted about his business establishment. His infringement is not being thwarted by contact with Plaintiffs' counsel or by legal action. Defendant's inaction "demonstrates [his] refusal to acknowledge [his] legal obligations, makes the threat of continued infringement likely, and underscores the ineffectiveness of a remedy at law." *Mary Kay*, 827 F. Supp. 2d at 596 (internal quotation marks omitted). Additionally, Defendant's "failure to appear has made it impossible for [Plaintiffs] to present a claim for actual damages" and even if they received damages, there is no guarantee that Defendant would not continue infringing upon their trademark. *Id.* The balance of the hardships also favors granting a permanent injunction. Defendant is merely being stopped from infringing upon Plaintiffs' trademarks. He is not being forced to alter his business in any way, except that he must cease displaying Plaintiffs' trademarks. Thus, Plaintiffs have satisfied the traditional permanent-injunction analysis.

### C. Reasonable Attorney's Fees and Costs Incurred in this Action

Given the trademark infringement by Defendant in violation of 15 U.S.C. § 1114, Plaintiffs request reasonable attorney's fees under 15 U.S.C. § 1117(a). In their Memorandum of Law in Support of their Motion for Entry of Judgment and Permanent Injunction Order, Plaintiffs clarify that they seek costs incurred in prosecuting this action under both 15 U.S.C. § 1117(a) and West Virginia Code § 42-2-14(a). Pls.' Mem. Law Supp. Mot. Entry J. & Perm. Inj. Order 11. However, given that Plaintiffs only apply the federal statutes and federal case law to their arguments throughout their Memorandum, that § 1117(a) grants Plaintiffs costs, and that the wording of § 42-2-14(a) closely mirrors the wording of § 1117(a), the Court will only analyze Plaintiffs' claims under the federal statutes.

> Title 15 U.S.C. § 1117(a) states:
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Plaintiffs have proven trademark infringement by Defendant, so they are entitled to all costs allowable under § 1117(a). However, Plaintiffs have failed to prove that this case is "exceptional."

In the Fourth Circuit, "for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith." *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1992). "[A] case is 'exceptional' if the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Doughney*, 263 F.3d at 370 (internal quotation marks omitted). "'[W]illfulness' means more than simply that the act of infringement was done voluntarily and intentionally and not because of accident or other innocent reason." *In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 557, 562 (E.D. Va. 2010) (holding one set of defendants

liable for attorney's fees because they infringed upon the plaintiff's trademarks with impunity, believing that the plaintiff "would [not] ever get his case to court because he would die or run out of money first," but not holding another set of defendants liable because they merely knowingly participated in duplicating plaintiff's marks and designs). "[I]mportantly, the prevailing party bears the burden of demonstrating the exceptional nature of the case by clear and convincing evidence." *Id.*

Plaintiffs' allegations do not prove by clear and convincing evidence that this case is "exceptional" because they do not prove that Defendant's conduct was "malicious, fraudulent, willful or deliberate in nature." The allegations merely show that Plaintiffs tried on many occasions to force Defendant to remove its Valvoline® marks, but Defendant did not do so. His reasons for leaving up the marks could be malicious or they could be the result of an accidental belief that he somehow had the right to do so. *See, e.g.*, *Doughney*, 263 F.3d 359 (upholding district court's denial of reasonable attorney fees because the defendant "thought that he had a legitimate First Amendment right to express himself this way"). Given the lack of information surrounding Defendant's refusal to take down Plaintiffs' marks, Plaintiffs' request for reasonable attorney's fees under 15 U.S.C. § 1117(a) is denied without prejudice.

### III. Conclusion

For the reasons stated above, The Court **GRANTS** Plaintiffs' request for costs incurred in this action, but the Court **DENIES without prejudice** Plaintiffs' request for reasonable attorney's fees. The Court **DIRECTS** Plaintiffs to file any new motions regarding reasonable attorney's fees within 14 days of the entry of this Order. Further, the Court **PERMANENTLY ENJOINS** Defendant and his directors, principals, officers, agents, servants, employees, representatives,

successors, assignees, corporate affiliates, and shareholders, if any—and all those persons or entities acting in concert or participation with Defendant—from:

1. Using Plaintiffs' registered trademarks—or any other logos or trademarks that are confusingly similar to Plaintiffs' trademarks—for retail purposes or otherwise, including displaying such logos or trademarks as part of any sign, advertisement, or billboard promoting Defendant's business;

2. Engaging in any course of conduct with respect to Plaintiffs' registered trademarks that is likely to mislead the public into believing that Defendant is affiliated with or otherwise connected to Plaintiffs' business operations;

3. Engaging in any course of conduct with respect to Plaintiffs' registered trademarks that is likely to mislead the public into believing that the products marketed and/or offered for sale by Defendant are licensed, sponsored, authorized, or otherwise approved by Plaintiffs; and/or

4. Engaging in any other activity constituting infringement of or unfair competition with respect to Plaintiffs' registered trademarks.

The Court **ORDERS** Defendant to remove any and all of Plaintiffs' registered trademarks—including, but not limited to, the Valvoline® trademark—from any sign, billboard, store front, and/or advertisement displayed as part of or in connection with Defendant's business operations within 10 days of the entry of this Order. This Court shall have jurisdiction and be the appropriate venue for the enforcement of this Permanent Injunction, and Defendant will be assessed all future costs associated with any enforcement action.

-11-

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: October 24, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE